# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| STEVE LOGGINS, | ) |
| Plaintiff, | ) Case No.: 2:14-cv-01743-GMN-CWH |
| vs. | ) |
| | ) **ORDER** |
| LAS VEGAS METROPOLITAN POLICE DEPARTMENT, et al., | ) |
| Defendants. | ) |

Pending before the Court is the Motion for Summary Judgment filed by Defendants Las Vegas Metropolitan Police Department ("LVMPD") and Corrections Officer Norris ("Officer Norris") (collectively "Defendants"). (ECF No. 29). Plaintiff Steve Loggins ("Plaintiff") filed a response, (ECF No. 33), and Defendants filed a reply, (ECF No. 35). For the reasons discussed below, Defendants' Motion for Summary Judgment is **GRANTED**.

## I.     BACKGROUND

This case arises from an assault and battery against Plaintiff by inmate Joseph Perry ("Perry"). The attack occurred on August 26, 2012, while the two were incarcerated at the Clark County Detention Center ("CCDC"). (Loggins Dep. 14:1–25, Ex. A to Def.'s MSJ Appendix, ECF No. 30-1). Three to four days prior to the attack, Plaintiff reportedly noticed Perry giving "crazy stares" towards his table during breakfast. (*Id.* 15:14–25). According to Plaintiff, "[Perry] removed his shirt and just kept looking over at the table that I was at." (*Id.*) Plaintiff could not tell whether Perry was looking at him or someone else at the table. (*Id.* 16:2–4).

Later that day, Plaintiff claims to have spoken about Perry with Officer Norris, who was the on duty corrections officer at the time. (*Id.* 17:12–13). During this conversation, Plaintiff

claims he asked Officer Norris "what was wrong with [Perry]?" (*Id.* 19:15–19).  In response, Officer Norris allegedly gave Plaintiff instructions to "kind of stay away from him," and indicated that Perry had come from "2C", which Plaintiff understood was a smaller unit for people with mental health issues. (*Id.*).  According to Plaintiff, Officer Norris also told him that Perry was "crazy." (*Id.* 19:24–25).  After this conversation, Plaintiff did not inform any other corrections officers about concerns regarding Perry. (*Id.* 34:24–35:3).  Additionally, Plaintiff elected not to fill out a "kite" complaint, which he knew to be required by the CCDC when making complaints about other inmates. (*Id.* 24:17–25:21).

During the approximately four days between the breakfast incident and the attack, there were no other significant interactions between Plaintiff and Perry. (*Id.* 26:11–14).  On August 26, Plaintiff was watching television during his free time when suddenly he was knocked unconscious. (*Id.* 26:19–27:1).  Plaintiff's next memory was waking up in the medical unit. (*Id.* 28:15–18).  CCDC officers investigated the incident and confirmed the attacker was Perry. (Driscoll Decl. ¶ 17, Ex. D to Def.'s MSJ Appendix, ECF No. 30-4).

On August 25, 2014, Plaintiff initiated this action in state court. (Compl., Ex. B to Not. of Removal, ECF No. 1).  Defendant LVMPD subsequently removed the action to this Court on October 21, 2014. (Not. of Removal, ECF No. 1).  On October 23, 2014, Defendant LVMPD filed a Motion to Dismiss, (ECF No. 9), which the Court granted in part. (ECF No. 15).  On March 11, 2015, Plaintiff filed an Amended Complaint, alleging three causes of action: (1) Negligence; (2) Violation of 42 USC § 1983; and (3) Violation of § 1983 under *Monell*. (Am. Compl., ECF No. 17).  On January 12, 2016, Defendants filed the instant Motion for Summary Judgement. (ECF No. 29).

II.     **LEGAL STANDARD**

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*  "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis.  "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).  In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.  At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.  The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

## III.   DISCUSSION

As a preliminary matter, Defendants argue that Plaintiff has failed to substitute the unnamed fictitious defendants with named parties, and the deadline to amend the complaint and add parties has since expired.  Plaintiff does not contest this argument.  Accordingly, the Court dismisses all claims against the unnamed "Doe" defendants without prejudice. *See Romero v. Nevada Dept. of Corrections*, No. 2:08–cv–808–JAD–VCF, 2013 WL 6206705, *4 (D. Nev. Nov. 27, 2013).  The Court will address the remaining claims in turn.

/ / /

/ / /

### A. Negligence Claims

#### 1. Claim Against Officer Norris

To establish a claim of negligence, a plaintiff must demonstrate that: (1) the defendant owed a duty of care; (2) defendant breached that duty; (3) defendant's breach of duty was a legal cause of the injuries; and (4) the plaintiff suffered damages. *DeBoer v. Sr. Bridges of Sparks Fam. Hosp.*, 282 P.3d 727, 732 (Nev. 2012). In Nevada, the existence of a "duty" is a question of law and suitable for determination by summary judgment. *See Sparks v. Alpha Tau Omega Fraternity, Inc.*, 255 P.3d 238, 244 (Nev. 2011). "[P]rison officials have a specific duty to protect an inmate from attack only when the attack is foreseeable." *Butler ex rel. Biller v. Bayer*, 168 P.3d 1055, 1064 (Nev. 2007). Harm is foreseeable when prison officials "actually know that an inmate is at risk, that the attacking inmate is dangerous, or when prison officials otherwise have reason to anticipate the attack." *Id.*

Plaintiff argues that Officer Norris owed a duty to Plaintiff because the harm in this case was foreseeable. (Pl.'s Response 2:16–18, ECF No. 33). Specifically, Plaintiff asserts that Officer Norris "had knowledge that inmate Perry was crazy and dangerous enough to warn Plaintiff to stay away from inmate Perry." (*Id.* 3:26–28). The only evidence to support this argument is Plaintiff's vague account of his conversation with Officer Norris following the incident at breakfast. In this conversation, Plaintiff claims he "informed" Officer Norris about Perry and inquired "what was wrong with the young man?" (*Id.* 2:23–3:9). He then claims that that Officer Norris told him that Perry was "crazy" and to "stay away from him." (*Id.* 4:9–12).

Aside from these few assertions, Plaintiff has failed to provide any evidence regarding the details of what he told Officer Norris about the incident at breakfast. Specifically, Plaintiff has failed to provide evidence that he indicated to Officer Norris a concern for his personal safety or otherwise put Officer Norris on notice of a possible risk of danger. To the contrary, Plaintiff actually admits that he did not think anything of the breakfast incident. (*See* Pl.'s

Statement, Ex. C to Def.'s MSJ Appendix, ECF No. 30-3). This lack of concern is further evidenced by the fact that Plaintiff elected not to fill out a "kite" complaint against Perry. Accordingly, even after drawing all justifiable inferences in favor of Plaintiff, the Court finds insufficient evidence to show that Officer Norris actually knew that Plaintiff was at risk of an attack. *See Bayer*, 168 P.3d at 1064.

The Court is likewise unpersuaded that Officer Norris' alleged comments regarding Perry are sufficient to establish knowledge of his dangerousness. As a corrections officer, Officer Norris was not responsible for the classification and placement of inmates into general population. (*See* Driscoll Decl. ¶ 10, Ex. D to Def.'s MSJ Appendix). Therefore, even if Officer Norris did state that Perry was "crazy" and that he came from psychological housing module "2C", this alone does not establish that Officer Norris had actual knowledge of Perry's dangerousness. Absent additional facts to demonstrate such knowledge (e.g. prior instances of inmate violence involving Perry), Officer Norris was justified in relying on Perry's classification as suitable for the general prison population. Accordingly, the Court finds that the attack was not foreseeable for purposes of establishing a duty under a negligence claim. As Officer Norris did not have a duty to protect Plaintiff from unforeseeable attacks, summary judgment is granted on this claim.

### 2. Claim Against LVMPD for Negligent Training and Supervision

Defendants argue that Plaintiff's claim of negligent training and supervision is barred by the discretionary immunity statute. *See* Nev. Rev. Stat. § 41.035. Defendants are correct.

In Nevada, certain government actors have discretionary immunity. Nev. Rev. Stat. § 41.032. This section of the code immediately follows the section that waives the state's sovereign immunity but retains the state's Eleventh Amendment protection. *See* Nev. Rev. Stat. § 41.031. The discretionary act immunity statute specifically refers to actions brought "against an immune contractor or an officer or employee of the State or any of its agencies or

political subdivisions." § 41.032.  On its face, this statute does not immunize municipal governments or their employees, because, in light of modern case law, municipalities are considered independent corporations or "persons" with their own identities, not mere political subdivisions of a state. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 (1978).  The Nevada Supreme Court, however, has implicitly assumed that municipalities are political subdivisions of the state for the purposes of applying the discretionary act immunity statute. *See, e.g.*, *Travelers Hotel, Ltd. v. City of Reno*, 741 P.2d 1353, 1354–55 (Nev. 1987).  This construction is consistent with *Monell*, because the discretionary act immunity statute only protects state and municipal agencies against state-law causes of action.

The question remains as to whether there is discretionary immunity as a matter of law in this case.  The statute immunizes municipal agencies and their employees against actions: "[b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the State or any of its agencies or political subdivisions or of any officer, employee or immune contractor of any of these, whether or not the discretion involved is abused." Nev. Rev. Stat. § 41.032(2).  In interpreting this statute, the Nevada Supreme Court has explicitly adopted the two-part test for discretionary immunity under the Federal Tort Claims Act, under which there is discretionary immunity when: (1) the allegedly negligent acts involve elements of judgment or choice; and (2) the judgment or choice made involves social, economic, or political policy considerations. *Martinez v. Maruszczak*, 168 P.3d 720, 722 (Nev. 2007) (citing *Berkovitz v. United States*, 486 U.S. 531 (1988); *United States v. Gaubert*, 499 U.S. 315 (1991)).  A court does not ask whether the official abused his or her discretion, *see* Nev. Rev. Stat. § 41.032(2), but only whether the acts concerned a matter in which the official had discretion.  In other words, the immunity is not infinitely broad, but once it is determined that the acts involved judgment or choice on social, economic, or political policy considerations, the immunity applies even to abuses of discretion.

There is not, however, immunity for discretionary acts taken in bad faith. *See Falline v. GNLV Corp.*, 823 P.2d 888 (1991). The *Falline* Court held that "bad faith" encompasses acts that are completely outside the authority of an official: "Bad faith . . . involves an implemented attitude that completely transcends the circumference of authority granted the individual or entity. In other words, an abuse of discretion occurs within the circumference of authority, and an act or omission of bad faith occurs outside the circumference of authority." *Id.* at 892 n.3.

In *Davis v. City of Las Vegas*, the Ninth Circuit noted that under *Falline* where an officer arrests a citizen in an abusive manner not as the result of the exercise of poor judgment as to the force required to make an arrest, but instead because of hostility toward a suspect or a particular class of suspects--such as members of racial minority groups--or because of a willful or deliberate disregard for the rights of a particular citizen or citizens, then the officer's actions are the result of bad faith and he is not immune from suit. 478 F.3d 1048, 1060 (9th Cir. 2007).

Likewise, the Alabama Supreme Court aligns bad faith with "malice or willfulness." *See Wright v. Wynn*, 682 So.2d 1, 2 (Ala. 1996). The difference between non-actionable abuses of discretion and actionable bad-faith violations of rights therefore appears to turn on the officer's mental state; when he crosses the line from reckless as to a person's rights to malicious intent to violate them, he is no longer protected by the discretionary immunity statute, even if he initially satisfies the two-part test under *Martinez*.

"[D]ecisions relating to the hiring, training, and supervision of employees usually involve policy judgments of the type Congress intended the discretionary function exception to shield." *Vickers v. United States*, 228 F.3d 944, 950 (9th Cir. 2000); *accord Bryan v. LVMPD*, 349 Fed. Appx. 132, 134 (9th Cir. Oct. 7, 2009); *see Neal-Lomax v. LVMPD*, 574 F. Supp. 2d 1170, 1192 (D. Nev. 2008) (citing *Vickers*, 228 F.3d at 950) (granting summary judgment on a negligent supervision and training claim in an excessive force case), *aff'd*, 2010 WL 997110 (9th Cir. Mar. 17, 2010). Because the Nevada Supreme Court has adopted the federal case law

on discretionary act immunity in applying Nev. Rev. Stat. § 41.032, *see Martinez*, 168 P.3d at 722, and because no bad faith is alleged to have been present during the course of the allegedly negligent training and supervision, the Court finds, as a matter of law, that LVMPD has discretionary immunity as to the negligent training and supervision claim. *See Bryan*, 349 Fed. Appx. at 134; *Neal-Lomax*, 547 F. Supp. 2d at 1192. Accordingly, the Court grants summary judgment in favor of LVMPD as to Plaintiff's negligent training and supervision claim.

### B. Section 1983 Claims

#### 1. Claim Against Officer Norris

A prison official has the duty to "take reasonable measures to guarantee the safety of inmates," which includes protecting prisoners from "violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994). This does not mean, however, that "every injury suffered by one prisoner at the hands of another [] translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834. "A prison official's duty under the Eighth Amendment is to ensure reasonable safety, a standard that incorporates due regard for prison officials' unenviable task of keeping dangerous men in safe custody under humane conditions." *Id.* at 844–45 (citations and quotations omitted). A prison official violates the Eighth Amendment only when his acts constitute deliberate indifference "to a substantial risk of serious harm to an inmate." *Id.* at 828.

A "prison official violates the Eighth Amendment only when two requirements are met." *Id.* at 834. First, an injury must be "sufficiently serious." *Id.* To meet this first requirement "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* Second the prison official must act with "deliberate indifference." *Id.* In order to sufficiently state a claim for deliberate indifference, a plaintiff must allege (1) that the defendant was aware of objective facts which raise an inference that a substantial risk of harm

existed; (2) that the defendant was subjectively aware of the substantial risk of harm; and (3) that the defendant did not respond reasonably to the risk. *See, e.g.*, *id.* at 844.

Deliberate indifference is not an objective inquiry; the official must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.  "[P]rison officials who lacked knowledge of risk cannot be said to have inflicted punishment." *Id.* at 844.

Even if there are "underlying facts indicating a sufficiently substantial danger," a prison official cannot be found liable if he or she is unaware of the danger or believed, no matter how unsoundly, that the risk was insubstantial or nonexistent. *Id.*  "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.*  "Whether one puts it in terms of duty or deliberate indifference, prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause." *Id.* at 845.

Here, Plaintiff once again relies on the single conversation between himself and Officer Norris to conclude that Officer Norris was "deliberately indifferent to an obvious risk of substantial bodily harm to Plaintiff and did nothing about it." (Pl.'s Response 7:8–17).  Based on the deficiencies already explained above, the Court finds this evidence insufficient to establish the elements of the deliberate indifference standard.  Notably, Plaintiff has not provided evidence as to any specific objective facts that he conveyed to Officer Norris that would give rise to an inference of a substantial risk of harm.  Moreover, beyond conclusory assertions, Plaintiff has failed to sufficiently demonstrate that Officer Norris had subjective knowledge of a substantial risk of harm.  Accordingly, the Court grants summary judgment in favor of Officer Norris on this claim.

### 2. Claim Against LVMPD

Plaintiff's Amended Complaint states that the § 1983 claim is asserted "AGAINST

ALL DEFENDANTS OTHER THAN DEFENDANT DOE INMATE," which would include LVMPD. (Compl. 5:14–15). This Court already dismissed this claim against LVMPD with prejudice in its previous order. (*See* Order, ECF No. 15). Accordingly, Plaintiff cannot reassert this claim, and it is hereby dismissed.

### C. *Monell* Claim Against LVMPD

To bring a claim for the deprivation of a constitutional right by a local governmental entity, Plaintiff "must establish: (1) that he possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy 'amounts to deliberate indifference' to the [P]laintiff's constitutional right; and (4) that the policy is the 'moving force behind the constitutional violation.'" *Oviatt By & Through Waugh v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389–91 (1989)). "[A] plaintiff seeking to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate a plaintiff's rights must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences." *Board of the County Comm'rs v. Brown*, 520 U.S. 397, 407 (1997) (citing *City of Canton, Ohio* 89 U.S. at 388–89). "A showing of simple or even heightened negligence will not suffice." *Brown*, 520 U.S. at 407.

Plaintiff asserts a *Monell* claim based on LVMPD's alleged failure to sufficiently train or supervise Officer Norris. (*See* Pl.'s Response 9:26–10:2). Specifically, Plaintiff argues that "[i]f Defendant NORRIS, a 17-year veteran, was not properly trained and/or supervised, that is evidence that there is a policy of [omission] because, certainly, none of the corrections officers are being properly trained or supervised by LVMPD." (*Id.* 10:21–23). Aside from this conclusory assertion, Plaintiff has failed to provide any actual evidence of a policy at LVMPD that amounts to deliberate indifference to a constitutional right. The mere allegation that one corrections officer was improperly trained is insufficient to raise such an inference. *See*

*Blankenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir. 2007) ("[E]vidence of the failure to train a single officer is insufficient to establish a municipality's deliberate policy."). Accordingly, the Court grants summary judgment in favor of LVMPD.

## IV.   CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgement, (ECF No. 29), is **GRANTED**.

The Clerk of the Court shall enter judgment accordingly and close the case.

**DATED** this __30__ day of September, 2016.

_____
Gloria M. Navarro, Chief Judge
United States District Judge